**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------X
ANTONIO BERTOLINI,

                    Petitioner,

        -against-

SUPERINTENDENT JOSEPH SMITH,
Shawangunk Correction Facility, ATTORNEY
GENERAL ANDREW CUOMO of the State of
New York,

                    Respondents.
-------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
05 CV 2620 (ADS)

**APPEARANCES:**

**RAYMOND E. KERNO, ESQ.**
Attorney for the Petitioner
1527 Franklin Avenue, Suite 104
Mineola, New York 11501

**KATHLEEN M. RICE, DISTRICT ATTORNEY**
**COUNTY OF NASSAU**
Attorney for the Respondents
262 Old Country Road
Mineola, New York 11501
        By:    Judith R. Sternberg, Assistant District Attorney

**SPATT, District J.**

        Antonio Bertolini (the "petitioner") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

## I. BACKGROUND

On June 15, 1998, the Grand Jury of Nassau County indicted the petitioner and a co-defendant for (1) murder in the second degree based on a theory of depraved indifference; (2) manslaughter in the first degree; (3) criminal possession of a weapon in the second degree; and (4) criminal possession of a weapon in the third degree. The charges arose out of the shooting death of a man named Paul Behr.

The following basic facts were established at the trial. Behr was a master carpenter who owned a construction company with his brother Perry. Paul was also a volunteer firemen with the Syosset Fire Department. At the time of his death, Paul was living with Linda Coloccia at his residence in Syosset. Paul and Linda lived together for approximately four and one-half years, beginning in or about July 1993.

Linda Coloccia was married to Frank Coloccia for thirty years. In 1993, Linda moved out of the residence she shared with Frank to live with Paul Behr. Linda and Frank were not divorced at that time. Frank was aware that Linda was living with Paul, and made threats to her and Paul about their relationship. Linda and Frank's divorce was expected to become final sometime in 1997.

Frank Collocia is the petitioner's uncle. Because Frank was unhappy with the fact of Linda and Paul's relationship, he hired the petitioner to injure Behr. Frank Coloccio instructed the petitioner to "do permanent damage." To accomplish this task, the petitioner enlisted the help of an acquaintance, Christopher Rustici.

According to their plan, the petitioner would drive Rustici to Behr's house, and Rustici would assault Behr with a baseball bat previously hidden near the premises. The petitioner drove Rustici to Behr's house and parked nearby. The petitioner remained in the car, out of sight around the corner, as Rustici approached Behr's house. Rustici found Behr gardening on his front lawn.

Rather than harm Behr with a baseball bat, Rustici shot Behr in the back with a gun that he obtained from the petitioner. The petitioner and Rustici fled. Behr was discovered on his lawn by a thirteen-year-old neighbor, and died later that night at the hospital.

The petitioner and Rustici were severed for trial, with the petitioner being tried first. On September 30, 1999, the jury returned a verdict finding the petitioner guilty of second degree murder, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree. The trial court entered a judgment of conviction on December 15, 1999, and on that date sentenced the petitioner to a period of incarceration of twenty-five years to life on the second degree murder count; a concurrent seven and one-half to fifteen years on the second degree weapons possession count; and a concurrent three and one-half to seven years on the third degree weapons possession count.

On July 22, 2002, the New York State Supreme Court, Appellate Division, Second Department, affirmed the conviction and sentence. People v. Bertolini, 296

A.D.2d 553, 754 N.Y.S.2d 695 (2d Dep't 2002). On appeal, the petitioner argued that (1) the evidence at the trial did not support a conviction for depraved indifference murder; (2) the prosecution failed to prove his guilt beyond a reasonable doubt; and (3) his sentence was excessive. The Appellate Division ruled that:

> Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt of murder in the second degree beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt of murder in the second degree was not against the weight of the evidence (see CPL 470.15 [5]).
>
> The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).

Id. On December 6, 2002, the New York Court of Appeals denied leave to appeal. People v. Bertolini, 99 N.Y.2d 555, 784 N.E.2d 80, 754 N.Y.S.2d 207 (2002).

On December 16, 2003, the petitioner made a motion to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 alleging that: (1) he was denied the effective assistance of counsel based on his trial counsel's failure to introduce Rustici's written confession into evidence; and (2) that the Courts of New York State misapplied the homicide statutes to utilize depraved indifference murder to preempt the lesser homicide crime of manslaughter.

On June 18, 2004, the Honorable David P. Sullivan of the County Court, Nassau County, denied the Rule 440 motion. Judge Sullivan determined that

4

> Defendant's argument is wholly meritless because: 1) Rustici's statement was incredible; 2) even if believed, Rustici's statement would not have exculpated defendant; 3) Rustici's statement would have harmed defendant's case more than it could have helped; 4) defendant cannot demonstrate the absence of strategic or other legitimate explanations for the manner in which counsel conducted the defense; and 5) defendant cannot even demonstrate that Rustici's statement would have been admissible.

With regard to the petitioner's second argument, Judge Sullivan determined that the Rule 440 motion must be denied because the petitioner raised the issue of the distinction between depraved indifference murder and manslaughter before the Appellate Division, and that argument was rejected on the appeal. Thus, it was not a proper argument to raise in a Section 440 motion. On May 6, 2005, the Appellate Division, Second Department denied the petitioner's motion for leave to appeal the County Court's 440 decision.

On May 31, 2005, Bertolini filed this petition. The petitioner raises the following arguments in support of habeas corpus relief: (1) ineffective assistance of trial counsel; and (2) the Courts of New York State misapplied the homicide statutes to utilize depraved indifference murder to preempt the lesser homicide crimes of manslaughter in the first and second degrees.

## II. DISCUSSION

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act (the "AEDPA") provides that a federal habeas court may grant habeas relief to state prisoners with respect to

any claim that was adjudicated on the merits in state court proceedings only if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005) (discussing the federal habeas review standard set forth in Section 2254). It is well-settled that a state court's findings of fact are entitled to a "presumption of correctness" that the petitioner in question must rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state-court decision is 'contrary' to clearly established federal law within the meaning of § 2254(d)(1) if it is 'diametrically different' from, 'opposite in character or nature' to, or 'mutually opposed' to the relevant Supreme Court precedent." Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established Federal law if the state court applies Federal law to the facts of the case in an objectively unreasonable manner. See Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1439, 161 L. Ed. 2d 334 (2005) (citing Williams, 529 U.S.

at 405, 120 S. Ct. 1495); Serrano v. Fischer, 412 F.3d 292, 296 (2d Cir. 2005) (citations omitted). "[I]it is well-established in [this] Circuit that the 'objectively unreasonable' standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Rosa v. McCray, 396 F.3d 210, 219 (2d Cir. 2005) (citing Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003)).

Under the AEDPA, a court does not decide "whether the state court correctly interpreted the doctrine of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at the time." Brown v. Greiner, 409 F.3d 523, 533 (2d Cir. 2005); see also Williams, 529 U.S. at 405, 120 S. Ct. at 1495.

It is well-settled that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)). In this regard, the United States Supreme Court opined that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). On the contrary, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68, 112 S. Ct. 475 (citations omitted).

B. As to the Petitioner's Claims

1. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that she was prejudiced by her counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In applying the above two-prong test, "judicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. The relevant inquiry focuses "on the fundamental fairness of the proceeding whose results are being challenged." Id. at 696, 104 S. Ct. at 2069. "The court's central concern is not with 'grading counsel's performance,' but with discerning 'whether despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.' " United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696-97, 104 S. Ct. at 2069).

The burden is on the petitioner to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Indeed, as the Supreme Court has

noted, "there are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

With respect to the second prong, the petitioner can only establish prejudice if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Billy-Eko v. United States, 8 F.3d 111, 114 (2d Cir. 1993).

The petitioner argues that his trial counsel, Dennis Lemke, Esq., was ineffective for failing to introduce at the trial the post-arrest written confession of the co-defendant Rustici, who was tried separately. In his written confession, Rustici stated, in relevant part, the following:

> Sometime in July of [1997] I was introduced to this guy Anthony Bertolini who lives in Huntington. . . .
>
> A couple of weeks after I met Anthony he asked me if I wanted to make some money. I told him, yeah, how? He said, give a guy a beating with a bat. He told me the guy getting beat up owed his friend some money. He told me I could make a couple of thousand. I told him, yeah, whatever. I knew this guy would bullshit, so I didn't know if he was serious.
>
> Sometime in the second week of August I had another conversation with Anthony, and he asked if I was ready to beat up this guy. Again I told him, yeah, whatever. But he didn't give a specific time when this was to happen.
>
> On Friday, August 22, 1999, I was off from work that day hanging out in my house. At about 12:00 p.m. I got a call from Anthony, and he asked if I was "ready to go," meaning to make

money and beat this guy up. I told him, yeah. And he said he would pick me up in the afternoon.

At about 4-4:30 p.m. Anthony came to my house and blew his horn. I got in the car, a 1990-91 Lincoln Continental, four door, black. He asked me if I was ready, and I told him, yeah. But inside I was scared.

He started driving towards this guy's house in Syosset. On the ride he showed me a color photograph of a white guy in his thirties wearing a T-shirt and shorts, standing on some steps. Anthony said this is the guy we got to beat up, and again this guy owed his friend money.

After a short time Anthony was driving through a back street in a neighborhood, and pointed to a gray house and said the guy lives in that house. I saw two gray houses and wasn't sure which one he pointed to, but I didn't say anything. He then said the guy wasn't home. I think he was looking for a car.

I was relieved, but Anthony said we will come back later. He asked if I wanted a slice of pizza. At this time he drove to a pizza place near the train station in Syosset. We went in, got a slice, and Anthony made a call from a pay phone outside.

At about 5:00 p.m. we left the pizza place. Anthony reached under the driver's seat, pulled out an object wrapped in a light-colored T-shirt. He unwrapped it and he showed me a small beat up black revolver. He then told me "this would be easier than beating the guy with a bat." My heart started to race. I said, what the fuck am I supposed to do with this? And he "put a shot in his leg, foot, you know, that area."

I didn't say anything. He continued to drive towards the guy's house. At this time I heard Anthony say "he's home" as we went past the house. He then stopped the car down the block from the house. He again pointed to the house, and it was gray – and it was gray with a red door, second house off the corner. He handed me the gun and told me to go. I asked what he wanted me to do, and he said, knock on the door and shoot him in the doorway.

> As I started to get out of the car, he told me he would wait here, the windows would be down, just dive in the window.

Rustici then stated that he did not intend to shoot Behr, but only to scare him. He approached Behr's house moving in a "slow jog" with his hand on the gun. As he removed the gun from his pocket, he tripped on something, fell, and the gun discharged accidentally striking Behr. Rustici then ran back to the petitioner's car and dove head first through the passenger-side window. According to Rustici's statement, the petitioner said "I heard the gunshot. Where did you hit him?"

In the Court's view, trial counsel's decision not to include this confession in his presentation of the evidence did not constitute ineffective assistance of counsel. For the reasons stated below, the petitioner failed to establish that counsel's decision not to introduce this statement was error. For the same reasons, the Court finds that even if trial counsel's failure to introduce this confession fell outside the broad range of competent professional conduct, the petitioner did not satisfy Strickland's prejudice prong because there is no "reasonable probability" that petitioner would not have been convicted if the jury heard Rustici's version of the events. Strickland, 466 U.S. at 694, 104 S. Ct. 2052.

First, the Court does not interpret any part of Rustici's statement to be exculpatory to the petitioner. The proof at trial established that the petitioner hired Rustici in order to inflict a severe beating on Behr, drove Rustici to Behr's house, and provided a gun to him to inflict "permanent damage." Rustici's statement is

11

consistent with that evidence.  Second, Rustici's confession contradicts a statement that the petitioner made to police that it was Rustici who asked for a gun, and not the other way around.  Third, Rustici states that Bertolini urged him to shoot Paul Behr in his leg or foot because it would be "easier" than beating him with a bat.  In this regard, the statement may have been harmful to the petitioner and could reasonably have provided a basis for trial counsel's decision to exclude it.

      The petitioner argues that "[i]rrespective of who gave whom the firearm, and what the firearm's role was to be in the beating of the victim, Rustici's statement that he slipped and the gun accidentally discharged, fatally wounding the victim, negated most of the rest of Rustici's statements."  The petitioner also contends that Rustici's "statement goes a long way to reduce Petitioner's level of culpability."  The Court disagrees.  At the time of the petitioner's trial, and when his conviction became final, the required mental state for the crime of depraved indifference murder was recklessness.  See, e.g., People v. Sanchez, 98 N.Y.2d 373, 381-82, 777 N.E.2d 204, 748 N.Y.S.2d 312 (2002), overruled by People v. Feingold, 7 N.Y.3d 288, 852 N.E.2d 1163, 819 N.Y.S.2d 691 (2006).  In the Court's view, the petitioner's conduct of hiring Rustici to hurt Behr, driving him to his house, showing him a picture of the victim, and sending off with a pistol to inflict serious injury is no less reckless if Rustici accidentally shot Behr than if he intentionally shot him.  Accordingly, the petitioner for habeas relief on the basis of ineffective assistance at trial is denied.

### 2. Sufficiency of the Evidence of Depraved Indifference Murder

As his second ground for habeas relief, the petitioner argues that the evidence at the trial was insufficient to convict him of depraved indifference murder, as opposed to the less serious homicide offense. To obtain habeas corpus relief based on insufficiency of the evidence, the Court must find that, when viewing the evidence most favorably to the prosecution, no rational trier of fact could find guilt beyond a reasonable doubt. Farrington v. Senkowski, 214 F.3d 237, 240-41 (2d Cir. 2000) (citing Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). In addition, the Court must defer to the jury's determination of the weight given to conflicting evidence, witness credibility, and inferences drawn from the evidence. United States v. Vasquez, 267 F.3d 79, 90-91 (2d Cir. 2001) (citing Glasser v. United States, 315 U.S. 60, 80, 62 S. Ct. 457, 86 L. Ed. 680 (1942); United States v. Payton, 159 F.3d 49, 56 (2d Cir. 1998)).

A guilty verdict may not be disturbed if the jury has resolved these issues in a reasonable manner. See Payton, 159 F.3d at 56. The Court's "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402, 113 S. Ct. 853, 861, 122 L. Ed. 2d 203 (1993). A federal habeas court must "credit every inference that could have been drawn in the state's favor . . .

whether the evidence being reviewed is direct or circumstantial." Reddy v. Coombe, 846 F.2d 866, 869 (2d Cir. 1988).

Applying this standard, the Court finds that the evidence introduced at the trial was sufficient to convict the petitioner of depraved indifference second degree murder. Under New York law, a defendant is guilty of murder in the second degree when "under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal § 125.25(2). At the time of the trial and when the petitioner's conviction became final, recklessness was the culpable mental state for depraved indifference murder. The depravity and indifference of the crime was assessed objectively based on a review of the circumstances constituting the offense. See People v. Sanchez, 98 N.Y.2d 373, 381-82, 777 N.E.2d 204, 748 N.Y.S.2d 312 (2002), overruled by People v. Feingold, 7 N.Y.3d 288, 852 N.E.2d 1163, 819 N.Y.S.2d 691 (2006); People v. Register, 60 N.Y.2d 270, 274, 457 N.E.2d 704, 469 N.Y.S.2d 599 (1983), overruled by People v. Feingold, 7 N.Y.3d 288, 852 N.E.2d 1163, 819 N.Y.S.2d 691 (2006).

The evidence admitted at the trial established that the petitioner hired Rustici to do "serious damage" to Behr; drove him to Syosset for that purpose; provided a picture of Behr to Rustici; gave Rustici a loaded pistol and sent him off to inflicting serious injuries on the victim. This conduct set in motion the sequence of event which

14

that created a created a grave risk of death, and did result in the shooting death of Paul Behr. The jury's conclusion that the petitioner's conduct was reckless and evinced depraved indifference to human life was not irrational, and did not amount to a violation of the petitioner's constitutional rights. See People v. Jones , 283 A.D.2d 665, 668, 725 N.Y.S.2d 691, 695 (3d Dep't 2001) (finding that evidence which demonstrated "that defendant, although aware of the shooting, left the premises without doing anything to assist Mitchell and that Mitchell survived for a period of time thereafter" sufficient to sustain the conviction for depraved indifference murder).

As a final matter, the Court notes that it appeared from the habeas petition that intertwined with the petitioner's sufficiency of the evidence argument was a claim that New York's depraved indifference murder statute is unconstitutional, either on its face or as applied in this case. The petitioner cites Jones v. Keane, No. 7:02-CV-01804-CLB, 2002 WL 33985141, at *5 (S.D.N.Y. May 22, 2002) (Brieant, J.), rev'd on other grounds 329 F.3d 290 (2d Cir. 2003), in which Judge Brieant of the Southern District of New York granted a habeas petition based on his conclusion that New York's depraved indifference murder statute was unconstitutionally vague.

Recently, in determining the habeas petition of Bertolini's codefendant Christopher Rustici, this Court rejected this vagueness argument but granted Rustici a certificate of appealability on the issue. See Rustici v. Philips, --- F. Supp. 2d ---, No. 04 CV 2856(ADS), 2007 WL 2238750, at **37-38 (E.D.N.Y. Aug. 3, 2007) (Spatt,

J.). However, in his reply brief, the petitioner clarifies that he is not challenging the constitutionality of New York's depraved indifference statute. He states that his argument in this Court rests on the development of the law of the State of New York as stated in the four New York Court of Appeals cases of People v. Sanchez, 98 N.Y.2d 373, 777 N.E.2d 204, 748 N.Y.S.2d 312 (2002); People v. Hafeez, 792 N.E.2d 1060, 762 N.Y.S.2d 572 (2003); People v. Gonzalez, 1 N.Y.3d 464, 807 N.E.2d 273, 775 N.Y.S.2d 224 (2004); and People v. Payne, 3 N.Y.3d 266, 819 N.E.2d 634, 786 N.Y.S.2d 116 (2004). This is essentially an additional aspect of the petitioner's argument challenging the sufficiency of the evidence supporting the petitioner's conviction.

Beginning in the year 2003, several cases restricted the circumstances under which a defendant could be found guilty of depraved indifference murder in New York. See People v. Hafeez, 792 N.E.2d 1060, 762 N.Y.S.2d 572 (2003); People v. Gonzalez, 1 N.Y.3d 464, 807 N.E.2d 273, 775 N.Y.S.2d 224 (2004); People v. Payne, 3 N.Y.3d 266, 819 N.E.2d 634, 786 N.Y.S.2d 116 (2004); People v. Suarez, 6 N.Y.3d 202, 844 N.E.2d 721, 811 N.Y.S.2d 267, 274 (2005)). The petitioner is not entitled to rely on the recent developments in the law of depraved indifference murder in the State of New York, because the changes happened after his conviction became final.

The four cases cited above, which led to the Court of Appeals' decision in People v. Feingold, 7 N.Y.3d 288, 852 N.E.2d 1163, 819 N.Y.S.2d 691 (2006), do not

apply retroactively and may not be used as a basis for granting the habeas relief the petitioner requests. See Policano v. Herbert, 7 N.Y.3d 588, 589, 603, 859 N.E.2d 484, 825 N.Y.S.2d 678 (2006); see also Rustici, --- F. Supp. 2d ---, 2007 WL 2238750, at **32-33; Cruz v. Conway, No. 05 CV 4750 (ARR), 2007 WL 1651855, *3 (E.D.N.Y. June 6, 2007); Nicholas v. Smith, No. 02 CV 6411(ARR), 2007 WL 1213417, *6 (E.D.N.Y. Apr. 20, 2007); Farr v. Greiner, Nos. 01 CR 6921 (NG)(MDG), 01-CV-6921 (NG)(MDG), 2007 WL 1094160, at **21-24 (E.D.N.Y. Apr. 10, 2007). Accordingly, the petition for habeas relief on the basis of insufficient evidence is denied. Because the petitioner is not challenging the constitutionality of New York's depraved indifference law, no certificate of appealability is granted on this issue.

## III.  CONCLUSION

For the reasons stated above, Antonio Bertolini's petition for a writ of habeas corpus is denied. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as the petitioner failed to make a substantial showing of a denial of a constitutional right. Miller-El v. Cockrell, 537 U.S. 332, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

The Clerk of the Court is directed to close this case.

**SO ORDERED**.

Dated: Central Islip, New York
September 20, 2007

                                                 */s/ Arthur D. Spatt*
                                                  ARTHUR D. SPATT
                                             United States District Judge